IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TERENCE TRAMAINE ANDRUS,**  Petitioner,  v.  **LORIE DAVIS, Director,** Texas Department of Criminal Justice, Correctional Institutions Division,  Respondent. | Case No. 4:19-cv-00717  District Judge David Hittner  **CAPITAL CASE** |

## UNOPPOSED MOTION TO STAY AND ABEY FEDERAL HABEAS PROCEEDINGS

With this unopposed motion, Petitioner Terence Tramaine Andrus respectfully requests that this Court enter an order to stay and abey his federal habeas proceedings until the conclusion of the state court proceedings recently ordered by the United States Supreme Court which are currently pending in the Texas Court of Criminal Appeals ("CCA") and would respectfully show:

This capital case is pending before this Court with an active briefing schedule. Mr. Andrus filed his Petition for Writ of Habeas Corpus on February 13, 2020. ECF No. 11. On February 26, 2020, the parties moved for a scheduling order, ECF No. 14, which this Court granted the following day, ECF No. 15. On June 2, 2020, this Court granted Mr. Andrus an extension of time to file an Amended Petition, which is now due on August 31, 2020. ECF No. 17. Due to intervening circumstances in his state habeas proceedings, Mr. Andrus asks this Court to suspend the current briefing schedule and stay and abey his federal habeas proceedings.

1

On June 15, 2020, the Supreme Court granted Mr. Andrus' petition for writ of certiorari from his state habeas proceedings, vacated the judgment of the CCA denying relief, and remanded the case to that court. *Andrus v. Texas*, 590 U.S. __, 2020 WL 3146872, *1 (2020), attached hereto as Exhibit 1. The Court's opinion focused on whether Mr. Andrus established that his trial counsel was ineffective for failing to investigate and present mitigating evidence, a claim that is also a part of his pending federal petition. Doc. 11 at 117–27. To succeed on this claim, Mr. Andrus must show that his trial counsel's performance was deficient and that counsel's deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 688, 694 (1984). The Supreme Court held that Mr. Andrus "has shown deficient performance under the first prong of *Strickland*, and there is a significant question [as to] whether the [CCA] consider[ed] prejudice under the second prong of *Strickland*." *Andrus*, 2020 WL 3146872 at *9. Thus, the Court remanded Mr. Andrus' case to the CCA to allow it to address the prejudice prong in the first instance. *Id.* at *4.

The Supreme Court devoted a significant portion of its opinion to recapping the "grim facts of [Mr.] Andrus' life history," which were presented for the first time during the state habeas evidentiary hearing. *Id.* at *1. This "tidal wave" of unpresented mitigating evidence included a traumatic "childhood marked by extreme neglect and privation," as well as "a family environment filled with violence and abuse." *Id.* at *3. When Mr. Andrus was six, his mother began selling drugs out of their apartment and turned to prostitution to fund her addiction. *Id.* at *1. She was often high "and brought with her a revolving door of drug-addicted, sometimes physically violent boyfriends." *Id.* Furthermore, Mr. Andrus suffers from a variety of mental health issues, including a diagnosis of affective psychosis around the age of 10, possible schizophrenia, and a history of suicidal

ideation. *Id.* at *1, 5. The Supreme Court succinctly explained that "[t]he untapped body of mitigating evidence was, as the habeas hearing revealed, simply vast." *Id.* at *6.

Despite this readily-available mitigation evidence, trial counsel "not only neglected to present it; he failed to even look for it." *Id.* at *1. Trial counsel's own testimony showed that he "performed virtually no investigation of the relevant evidence." *Id.* at *1. According to the Supreme Court, the state habeas record makes clear that trial counsel performance was deficient under *Strickland* and prevailing professional norms in multiple ways. *Id.* at *1, 5. Specifically, the Court held that trial counsel "performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence," and as a result "what little evidence counsel did present backfired by bolstering the State's aggravation case." *Id.* at *5. Additionally, trial counsel "failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation." *Id.*

While trial counsel "nominally put on a case in mitigation . . . the record leaves no doubt that counsel's investigation to support that case was an empty exercise." *Id.* at *5. The Court described the scope of the investigation as "approach[ing] non-existent," and found that trial counsel: (1) was barely acquainted with the testifying witnesses; (2) "acknowledged that he did not look into or present the myriad tragic circumstances that marked Andrus' life;" (3) did not meet with close family members, "all of whom had disturbing stories about Andrus' upbringing;" (4) uncovered none of the evidence showing severe neglect and pronounced trauma; (5) was unaware of Mr. Andrus' mental health issues; and (6) "disregarded, rather than explored, the multiple red flags" of the "vast" available mitigating evidence. *Id.* at *5–6. In sum, "counsel performed virtually no investigation, either of the few witnesses he called during the case in mitigation, or of the many circumstances in Andrus' life that could have served as powerful mitigating evidence." *Id.* at *6.

3

When given the opportunity to explain his woefully inadequate investigation, trial counsel offered no reason, much less an objectively reasonable strategy, for his failures. *Id.* at *1, 6. The Supreme Court held that Mr. Andrus' trial counsel's investigation was "plainly not" reasonable under prevailing profession norms and that any conclusion to the contrary is "erroneous as a matter of law." *Id.* at *5, 8. Trial counsel's ignorance of pertinent avenues for investigation of which he either was, or should have been, aware was unconstitutionally deficient. *Id.* at *5 (quoting *Porter v. McCollum*, 558 U.S. 30, 40 (2009).

This abject failure led directly to a second deficiency—that "much of the so-called mitigating evidence" offered actually "aided the State's case in aggravation." *Id.* at *6. Trial counsel's introduction of "aggravating evidence confirms the gaping distance between his performance at trial and objectively reasonable professional judgment." *Id.* In particular, testimony introduced by the defense from Mr. Andrus' mother inaccurately portrayed his life as one of "a tranquil upbringing" and that he "got himself into trouble despite his family's best efforts." *Id.* This testimony was far from truth, and largely diametrically opposite of Mr. Andrus' actual upbringing, as shown at the state habeas hearing. When Mr. Andrus later testified at trial, counsel turned "a bad situation worse" because counsel's "uniformed decision" to call his mother "undermined [Mr.] Andrus' own testimony." *Id.* at 7. Rather than acting as an advocate for his client, trial counsel made egregious statements that the "jury could have understood . . . to insinuate that [Mr.] Andrus was lying" during his own testimony when he tried to convey the true nature of his upbringing to the jury. *Id.*

The Supreme Court also held that trial counsel performance was deficient for failing to investigate the State's case in aggravation. "'Counsel ha[s] a duty to make all reasonable efforts to learn what they c[an] about the offense[s]' the prosecution intends to present as aggravating

4

evidence." *Id.* at *7 (quoting *Rompilla v. Beard*, 545 U.S. 374 384, (2005)). Yet, in this instance, trial counsel "failed to conduct any independent investigation of the State's case in aggravation, despite ample opportunity to do so." *Id.* Mr. Andrus' himself suffered "severe" harm during his time in the Texas Youth Commission—and, contrary to the State's version of events, his behavioral problems while there were "notably mild." *Id.* Substantial available evidence would have countered and contextualized other incidents offered in aggravation, had trial counsel merely looked for it. *Id.* at *7–8. Instead, trial counsel left the aggravating evidence "untouched," going so far as conceding that Mr. Andrus "was 'a violent kind of guy.'" *Id.* at *7 (quoting 52 RR 35). According to the Supreme Court, "[t]here is no squaring that conduct, certainly when examined alongside counsel's other shortfalls, with objectively reasonable judgment." *Id.* at *8.

After finding that the record established that trial counsel was deficient, the Supreme Court turned to the question of prejudice. The Court determined that "it is unclear whether the [CCA] considered *Strickland* prejudice at all." *Id.* at *8. The CCA's opinion contained only a one-sentence denial of Mr. Andrus' *Strickland* claim, casting doubt as to whether the court engaged in the prejudice inquiry at all. Given this uncertainty, the Supreme Court remanded the case to the CCA, for that court to conduct the "weighty and record-intensive analysis" of whether Mr. Andrus demonstrated prejudice in the first instance. *Id.* at *9. In doing so, the Court also criticized the reasoning of Justice Richardson's concurring opinion, which was joined by three other CCA justices. The Court noted that the concurrence incorrectly "seemed to assume that the prejudice inquiry here turns principally on how the facts of this case compare to the facts of *Wiggins*," despite the fact that "we have never before equated what was sufficient in *Wiggins* with what is necessary to establish prejudice." *Id.* at *17–18.

In light of the Supreme Court's opinion, there is no judgment from the CCA regarding Mr. Andrus' state habeas proceedings. For individuals seeking federal habeas relief, Congress' intent was to "channel prisoners' claims first to the state court" to allow the states to have the first opportunity to, and primary responsibility for, determining whether relief is warranted. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *see also Rhines v. Weber*, 544 U.S. 269, 273 (2005) ("[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims."). A claim adjudicated on the merits in state court must satisfy the relitigation bar of 28 U.S.C. § 2254(d), which is an additional barrier to relief. The relitigation bar is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). If the state court has issued a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

District courts have the authority to stay federal habeas proceedings and should do so to permit states court the first opportunity to rule on constitutional claims. *Rhines*, 544 U.S. at 276. This court should stay and abey Mr. Andrus' federal proceedings to allow the state court to issue a new judgment as directed by the Supreme Court. Because the Supreme Court vacated the CCA's judgment, there is no state court decision for this Court to evaluate under the AEDPA's deferential scheme. Nor is there a timetable for when the CCA will issue a new judgment, where there is the possibility that relief will be granted to Mr. Andrus. Proceeding under the current briefing schedule would contravene the strictures of AEDPA and would be a waste of both the parties' and this Court's resources at this juncture. It therefore follows that stay and abeyance is appropriate. While this is an atypical situation, federal courts in other circumstances have entered orders staying and abeying

6

federal habeas proceedings to allow state court to resolve pending claims first, even outside of the typical *Rhines* framework regarding mixed habeas petitions. *Long v. Davis*, No. 3:12-cv-00839 (N.D. Tex. March 12, 2018) (ECF No. 49); *Irvan v. Thaler*, No. 4:12-cv-01683 (S.D. Tex. Dec. 6, 2013) (ECF No. 42). The same remedy is appropriate here.

In light of the foregoing, Mr. Andrus requests that this Court enter an order: (1) suspending the current briefing schedule in federal court; (2) staying and abeying his federal habeas proceedings until the conclusion of his state court proceedings pending in the CCA; and (3) order that the parties, within 30 days of the resolution of the state court proceedings, notify this Court regarding the resolution of those proceedings and submit a joint proposed briefing schedule for resuming the federal proceedings. The Director is unopposed to the requested relief.

Respectfully submitted,

DATE: June 30, 2020

JASON D. HAWKINS
Federal Public Defender

/s/ *Jeremy Schepers*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
jeremy_schepers@fd.org

/s/ *David Currie*
David Currie (TX 24084240)
Assistant Federal Public Defender
david_currie@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)

*Counsel for Petitioner*

## CERTIFICATE OF CONFERENCE

David Currie, counsel for Mr. Andrus, has conferred with opposing counsel, Katherine Hayes of the Texas Attorney General's office on June 30, 2020, and she is not opposed to the relief sought in this motion.

/s/ *Jeremy Schepers*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served by CM/ECF upon counsel for Respondent on June 30, 2020.

/s/ *Jeremy Schepers*